JODI LINKER
Federal Public Defender
STEVEN J. KOENINGER
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA  94102
Telephone:  (415) 436-7700

Counsel for Appellant/Cross-Appellee BUTLER

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | C.A. Nos. 25-7209, 25-7849 |
| Plaintiff-Appellee/Cross-Appellant, | D.C.  No. CR 23-00449 SI (N.D. Cal., San Francisco) |
| v. | **APPELLANT-CROSS-APPELLEE'S MOTION FOR RECONSIDERATION AND RECONSDIERATION EN BANC OF ORDER DENYING LIMITED REMAND UNDER RULE 12.1** |
| LENIYAH (LEION) BUTLER, | |
| Defendant-Appellant/Cross-Appellee. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ................................................................................ 1

RELEVANT BACKGROUND .................................................................. 7

ARGUMENT ..................................................................................... 14

CONCLUSION ................................................................................... 22

CERTIFICATE OF COMPLIANCE ............................................................ 23

ADDENDUM .................................................................................... 24

## TABLE OF AUTHORITIES

**Federal Cases**

*Arevalo v. Hennessy*,
  882 F.3d 763 (9th Cir. 2018) ........................................................... 6, 18

*Mendia v. Garcia*,
  874 F.3d 1118 (9th Cir. 2017) ...................................................... 15, 17, 20

*United States v. Bryant*,
  144 F.4th 1119 (9th Cir. 2025) ......................................................... 19

*United States v. Cardoza*,
  790 F.3d 247 (1st Cir. 2015) ......................................................... 20, 21

*United States v. Carty*,
  520 F.3d 984 (9th Cir. 2008) (en banc) ........................................... 19

*United States v. Maldonado-Ruiz*,
  790 F.3d 62 (1st Cir. 2015) .......................................................... 20, 21

**United States Sentencing Guidelines**

U.S.S.G. § 1B1.13 ............................................................................. 1, 2

**Federal Rules**

Fed. R. Crim. P. 35 ........................................................................... 4, 15

Fed. R. Crim. P. 37 .......................................................................... *passim*

Fed. R. App. P. 12.1 ......................................................................... *passim*

**Federal Statutes**

18 U.S.C. § 3553 .............................................................................. 1, 19

18 U.S.C. § 3582 .............................................................................. *passim*

**Ninth Circuit Rules**

9th Cir. R. 27-10 ................................................................................ 3

9th Cir. R. 40-1 ................................................................................. 3

**Other Authorities**

Wright and Miller, *Federal Practice and Procedure* (5th ed.) .......................... 16

## INTRODUCTION

In one sentence, without reasoning or explanation, the motion panel's order denying Appellant/Cross-Appellee Leniyah (Leion) Butler a limited remand under Federal Rule of Appellate Procedure 12.1 (FRAP 12.1) completely thwarts her right to adjudication of a compassionate-release sentence reduction under 18 U.S.C. § 3582(c)—here, a reduction to time served that the experienced district court in this case (Hon. Susan Illston) held was warranted by extraordinary and compelling reasons, consistent with U.S.S.G. § 1B1.13, supported by the sentencing factors in 18 U.S.C. § 3553(a), and for which the court expressly "request[ed] that the Ninth Circuit provide a limited remand," GA-45,[1] so it could issue a compassionate-release order. *See* GA-2-5; Dkt-22[2] (order denying limited remand). By denying a limited remand of jurisdiction, the motion panel denied the district court the opportunity to issue a final order and effectively extinguished Ms. Butler's right to relief without an adjudication on the merits.

---

[1] "GA" refers to the Government's Appendix (Dkt-19); "CR" to the Clerk's Record; "Dkt" to the docket in these cross-appeals; "Mot." to Butler's initial motion; "Opp." to the government opposition; "Reply" to Butler's reply.

[2] Copy appended hereto.

1

The reasons underlying the district court's indicative ruling[3] granting compassionate release to Ms. Butler, who has served half her sentence already, are extraordinary and compelling. The court found that, "[a]s to medical circumstances, the evidence shows that Butler's gender dysphoria and her severe cognitive and intellectual impairments render it impossible for her to take care of herself in the unsafe correctional environments in which she has been incarcerated." GA-4 (addressing § 1B1.13(b)(1)). Additionally, the court determined "Butler has submitted compelling evidence in support of her claim that she has been repeatedly physically and sexually assaulted and that she has been targeted because she is transgender," and that "BOP's decision to house Butler at men's prisons where she is continually sexually assaulted and [its] failure to take any meaningful precautionary measures to ensure her ongoing safety," constitute grounds for compassionate release because the circumstances are "similar in gravity" to the enumerated grounds in Guideline § 1B1.13. *Id.*

---

[3] *See* Fed. R. Crim. P. 37.

(addressing § 1B1.13(b)(4)-(5)).[4] The court also found Butler "continues to be at risk of assault" in BOP custody. GA-4.

The panel's unreasoned denial of limited remand here overlooks, and is fundamentally at odds with, a significant purpose underlying Rule 12.1—ensuring defendants' access to statutorily provided sentence-reductions while also preserving the court of appeals' jurisdiction over their pending appeals. Reconsideration and/or reconsideration en banc[5] is necessary to align this Court's limited-remand rulings with this fundamental purpose behind Rule 12.1, and because a denial here unfairly precludes Ms. Butler from warranted relief contemplated by the governing rules. Additionally, this case concerns an exceptionally important question unaddressed by this Court's caselaw: when a district court issues an indicative ruling that a defendant is entitled to sentence-reduction relief under § 3582(c), what circumstances, if any, justify the denial of

---

[4] The court stated that upon remand from this Court, it "will issue a more fulsome order" granting the compassionate-release motion and "a sentence reduction to time served followed by a term of supervision with conditions." GA-3.

[5] *See* Circuit Rule 27-10(a)(2), (b) (recognizing reconsideration en banc); Circuit Rule 40-1 (cross-referencing Rule 27-10).

limited remand—especially considering the significant liberty interest at stake, and that Rule 12.1 was designed to facilitate that relief.

Rule 12.1 was enacted with the explicit expectation that its limited-remand procedure would be used to enable district courts to adjudicate sentence reductions under § 3582(c) during an appeal. *See* FRAP 12.1, advisory committee's note. So, too, was Federal Rule of Criminal Procedure (FRCP) Rule 37, which provides the indicative-ruling procedure precipitating a limited remand. *See* FRCP 37, advisory committee's note. In fact, two of the three limited-remand scenarios delineated by the Advisory Committee involve reductions to a defendant's sentence during a pending appeal: § 3582(c) motions and "sentence-reduction motions under Criminal Rule 35(b)."[6] FRAP 12.1, advisory committee's note.

Accordingly, Rules 12.1 and 37 plainly were designed to enable the reduction of a defendant's sentence while preserving the right to maintain a pending appeal. Rule 12.1's limited-remand procedure preserves all parties' rights, and no party is prejudiced by a limited remand here. If this Court remanded

---

[6] Rule 35(b) provides district courts with discretion, after sentencing, to reduce a defendant's sentence if they provide "substantial assistance."

for the "purpose of [a] ruling on the motion while retaining jurisdiction to proceed with the appeal," both parties would continue with their pending direct appeals (Ms. Butler's first brief on cross-appeal has yet to be filed), and the government may appeal the district court's final order on compassionate release—just as the Advisory Committee envisioned. *Id.*; *see id.* ("When relief is sought in the district court during the pendency of an appeal, litigants should bear in mind the likelihood that a new or amended notice of appeal will be necessary in order to challenge the district court's disposition of the motion."). Underscoring that a limited remand does not interfere with the government's rights, the government concedes a compassionate-release order "does not moot [its] appeal," which will "challenge the substantive reasonableness" of Ms. Butler's original sentence, Opp-14. Any appeal from the compassionate-release order, therefore, could be consolidated and presented efficiently with the government's cross-appeal.

Ms. Butler, on the other hand, is irreparably harmed by the denial of a limited remand allowing the district court to adjudicate her meritorious compassionate-release motion. The court not only determined a sentence reduction to time-served, followed by supervised release with conditions, was warranted in this case, but also found the BOP has failed to ensure Ms. Butler's

5

safety and she remains at ongoing risk of assault. GA-4. In light of these rulings, Ms. Butler's continued time in BOP custody causes her irreparable harm. *See Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."). Denial of limited remand only perpetuates that harm.

Finally, beyond presenting a one-sided view of the record in an apparent effort to re-litigate compassionate release before the district court even issues its "more fulsome" order, GA-3, the government's opposition is premised on judicial efficiency concerns untethered to Rule 12.1. *See* Opp-11-16; Reply-3-6. In essence, the government claims a limited remand would require additional resources because, while the parties' current appeals will be preserved, it would need to file another appeal from the compassionate-release order. *See* Opp-11-16. But Rule 12.1 contemplated precisely this scenario: maintaining jurisdiction for an appeal to proceed after a district court's ruling, with a party filing a new notice of appeal from that ruling. FRAP 12.1, advisory committee's notes. And in any event, consolidating a compassionate-release appeal with the government's pending cross-appeal would be more efficient than the protracted seriatim approach the government suggests (*i.e.*, after the direct appeals, then the district

6

court grants compassionate release, and then the government takes another appeal). *See* Opp-15-16.

More fundamentally, because the district court has held Ms. Butler is entitled to a § 3582(c) compassionate release and specifically requested a limited remand to grant that statutory relief, Ms. Butler's exceedingly strong liberty interest in compassionate release should not be trumped by the government's generalized efficiency concerns.

This Court should reconsider the prior order and grant Butler's motion for a limited remand while retaining jurisdiction.

## RELEVANT BACKGROUND

Undisputed evidence at trial and sentencing established that Ms. Butler survived a severe history of emotional, physical, and sexual abuse starting as a pre-pubescent child, and was trafficked into prostitution around age 13-14. *See* GA-142-43, 229-31, 239-52; CR-326 at 7, 10-17 (unredacted sentencing memorandum and declaration); CR-327 (Ex. T). On the streets, as a minor, teenager, and later a young adult, she was sex-trafficked and physically and sexually assaulted repeatedly. *See id.*; PSR-¶-64.

At trial, the jury acquitted Ms. Butler of second-degree murder. GA-297. As Ms. Butler told law enforcement when she was arrested, she shot the decedent, Hamza Walupupu, in self-defense out of fear for her life. *See* GA-303 (recounting Butler's numerous statements that she was afraid, and "[i]t was him or me"); GA-321; GA-333. Evidence at trial established that Walupupu had previously threatened, robbed, and sexually assaulted female and transgender prostitutes and had recently been diagnosed with schizophrenia and reported delusions. *See* GA-254-55.

On the night in question, Walupupu picked up a 20-year-old Ms. Butler[7] and drove her against her will to a dark and isolated parking lot on federal land, where she gave him oral sex. GA-255-256. When Walupupu demanded penetrative sex, Butler explained she was transgender. *See id.* Walupupu, who was highly intoxicated, became loud, angry, and threatened to sexually assault and kill Butler. *See* GA-236, GA-255; GA-301; GA-333 (recounting Walupupu's statements: "You're going to suck my dick. I'm going to fuck you. You're going to earn this money." "People like you could get killed. You could die."). The two

---

[7] Butler was a sex worker.

8

tussled briefly, and Walupupu jumped out of the car before going back to pull Ms. Butler out. *See* GA-256. Scared of what Walupupu would do to her, Ms. Butler shot him once with a gun she carried for protection. *See* GA-320-21, GA-333; GA-347; PSR-¶11.

In addition to a self-defense instruction, the jury was instructed on theories of imperfect self-defense and heat-of-passion which would result in conviction for the lesser-included offense of voluntary manslaughter. GA-258-59; GA-296-98. The jury rejected the government's theory of the case and convicted Ms. Butler of voluntary manslaughter, GA-297-98, apparently crediting that she was sincerely fearful or adequately provoked.

The district court sentenced Ms. Butler to a 60-month term of custody and three years of supervised release.[8] GA-173-74. In rejecting the government's sentencing recommendation, the court noted the government "has inadequately considered what she was convicted of, which was manslaughter, not second degree murder." GA-184. The judgment was entered November 3, 2025 and

---

[8] The court calculated a Guidelines range of 87-108 months. GA-183

included a recommendation that BOP house Butler at a women's facility. GA-174.[9]

Ms. Butler timely noticed an appeal from the judgment (case number 25-7209). The government noticed an appeal as well (case number 25-7849).

On April 16, 2026, Ms. Butler's trial counsel filed a motion seeking a sentence reduction under § 3582(c)(1)(A), commonly known as compassionate release. GA-137-169. The motion sought to reduce Ms. Butler's sentence to time-served and three years of supervised release with conditions, including her release to a residential program. Recognizing the above-captioned cross-appeals divested the district court of jurisdiction, trial counsel requested an indicative ruling under FRCP 37(a)(3). GA-142.

In summary, the grounds for the motion were that Ms. Butler's diagnosis of gender dysphoria and severe cognitive and intellectual impairments significantly diminish her ability to take care of herself in BOP custody. Both parties' experts evaluated Ms. Butler's cognitive and intellectual abilities and found them to be

---

[9] Responding to defense counsel's request for a recommended assignment to a women's BOP facility, the court misstated it would direct that assignment. *See* GA-221. The judgment corrected that misstatement. GA-147.

10

"extremely low," *i.e.*, the bottom one percent, and qualify as "borderline intellectual functioning." GA-144. Her IQ score was equivalent to a ten-and-a-half-year-old child (a fifth grader). *Id.*

In addition, BOP determined to house her in all-male prisons and failed to take steps to prevent her, given her limitations, from being repeatedly sexually abused and physically assaulted by other inmates. GA-141. First, Ms. Butler was housed at FCI Florence, where she was immediately—starting the day she arrived—threatened with assault and then sexually assaulted multiple times by two older male inmates in the Special Housing Unit (SHU). GA-141; CR-385-1.[10] She was held for approximately three months in isolation in the SHU because BOP could not ensure her safety. *Id.* Numerous inmates reported to BOP that she could not be housed safely. CR-399[11] at 4-6; CR-398 (unredacted version); GA-23-24. The government was unable to explain to the district court why Ms. Butler was designated to FCI Florence, given her risk factors and the prevailing conditions there.

---

[10] Ms. Butler's declaration, omitted from the government's appendix.
[11] Defendant's reply brief, omitted from the government's appendix.

Ms. Butler was transferred to FCI Sheridan, another medium-security all-male prison, while her motion was pending. There, her assigned cellmate was forced out by a violent, older inmate seeking to exercise control over Butler for sex; her new cellmate then attacked her when she resisted his advances. CR-399 at 7-8; CR-398; GA-34-35. Ms. Butler was later approached by three different older male inmates who groped her and attempted to force her to perform oral sex on them—then physically assaulted her in front of BOP staff when she refused. CR-410 at 1, CR-410-1;[12] CR-415 (Ex. A at 4, Ex. B at 4);[13] GA-23. Ms. Butler was again placed in SHU isolation, where she remained. GA-36.

At a hearing on June 11, 2026, the district court commented, "I was just struck by the plan, which is there is no plan. There is no plan. There is no way to keep her safe…. The only way to keep her safe is to keep her in the SHU, which is used as punishment." GA-35-36. The court also evaluated the defense's release plan—to a residential program for sex-trafficking survivors—and found Ms. Butler would not present a danger to the safety of any other person or the

---

[12] Defendant's supplemental brief, omitted from the government's appendix.
[13] Defendant's second supplemental filing, omitted from the government's appendix.

12

community if placed on supervision with certain conditions. GA-37-45; GA-3-4. For the reasons discussed at the hearing (and later noted in its written ruling), the court orally issued an indicative ruling that it would grant Butler's compassionate-release motion reducing her sentence to time served followed by supervision, stated a written order would follow, and specifically asked this Court to "provide a limited remand" so it could act on the motion. GA-45.

The next day, Ms. Butler filed a notice of indicative ruling and emergency motion asking this Court for a limited remand under Rule 12.1, while retaining jurisdiction over the captioned cross-appeals, so the district court could rule. Dkt-15. Among other things, the motion explained the Advisory Committee Notes to Rule 12.1 and Rule 37 expressly contemplated their indicative-ruling and limited-remand process would be used for adjudicating sentence-reduction motions under § 3582(c) while a court of appeals maintains jurisdiction over a pending appeal. Mot-8-9.

Soon thereafter, the district court issued a written indicative ruling and stated it would issue a more-detailed order upon remand from this Court. GA-2-5; *see* discussion *supra*. Butler submitted the order via correspondence. Dkt-17.

13

This Court ordered a response to Butler's motion, and the government filed an opposition on June 15, 2026. Dkt-19. The government conceded a grant of compassionate release "does not moot" its current cross-appeal. GA-14. It nevertheless argued a remand should be denied because it would increase demand on judicial resources and impede judicial efficiency. Opp-1, 10-16.

Ms. Butler filed a reply brief the next morning. Dkt-21.

On June 18, 2026, a motions panel denied Butler's motion for a limited remand. Dkt-22. The order provided no reasoning. *Id.*

## ARGUMENT

Reconsideration and/or reconsideration en banc is necessary here to align this Court's limited-remand rulings with a fundamental purpose behind FRAP 12.1 and FRCP 37: to provide defendants access to, and district courts the ability to provide, warranted sentence-reduction relief under § 3582(c) while an appeal is pending. Under Rule 37(a)(3), a district court lacking authority to grant a motion for relief because of a pending appeal may issue an "indicative ruling" stating "it would grant the motion if the court of appeals remands for that purpose"; after the court of appeals is notified of the indicative ruling, Rule 12.1(b) provides it "may remand for further proceedings [on the indicative ruling] but retains jurisdiction

14

unless it expressly dismisses the appeal." *See also Mendia v. Garcia*, 874 F.3d 1118, 1121 (9th Cir. 2017) ("FRAP 12.1 permits us to remand a case to the district court, while retaining jurisdiction, for the limited purpose of allowing the district court to take action consistent with an earlier indicative ruling.").

Critically, the limited remand Ms. Butler seeks is expressly sanctioned by the Advisory Committee Notes to both Rule 12.1 and Rule 37. The notes make plain these rules were enacted with the understanding and expectation that they would be used to facilitate sentence-reductions under § 3582(c). *See* FRAP 12.1, advisory committee's note ("In the criminal context, the Committee anticipates that Rule 12.1 will be used primarily if not exclusively for ... reduced sentence motions Criminal Rule 35(b), and *motions under 18 U.S.C. § 3582(c)*.") (emphasis added); FRCP 37, advisory committee's note (stating same anticipation regarding "Criminal Rule 37"). Notably, two of the three uses the Committee identified for Rules 12.1 and 37 in the criminal context—motions under § 3582(c) and Rule 35(b)—involve reductions to a defendant's sentence. *See id.* Thus, while Rules 12.1 and 37 are not limited in application to a specified list of post-judgment motions, it is indisputable they were enacted to facilitate the provision of warranted sentence-reduction relief to defendants with pending appeals.

15

Moreover, the Advisory Committee recognized the importance of preserving a party's right to maintain its pending appeal. The "preferred course" under Rule 12.1 is what Ms. Butler requested here: for the court of appeals to remand for "the sole purpose of [a] ruling on the motion" subject to the indictive ruling "while retaining jurisdiction to proceed with the appeal after the district court rules." FRAP 12.1 advisory committee's notes; *see* 16A Wright and Miller's Federal Practice and Procedure § 3858.10 (5th ed.) ("Courts should also take care that they do not strip litigants of their right to maintain an appeal[.]"). Nor did the Committee recommend against limited remand if the district court's ruling may generate an additional appeal. Rather, it *expected* this result, reminding litigants that a "new or amended notice of appeal" would likely be "necessary in order to challenge the district court's disposition of the motion." FRAP 12.1 advisory committee's notes.

The motion panel's denial of Ms. Butler's request for a limited remand allowing the district court to make its § 3582(c) ruling is fundamentally at odds with these purposes underlying Rules 12.1 and 37—and effectively extinguishes Butler's right to statutory relief without any adjudication on the merits. This Court

should reconsider that denial and grant a limited remand that allows the district court to act as expressly contemplated during enactment of these rules.

In addition, because Rule 12.1 was designed with sentence-reduction relief in mind, reconsideration en banc also is appropriate in this case because it concerns an exceptionally important question unaddressed by this Court: when a district court issues an indicative ruling that a defendant is entitled to sentence-reduction relief under § 3582(c), what circumstances, if any, justify the denial of a limited remand—especially considering Rule 12.1 was designed to enable that relief, and the significant liberty interests at stake for defendants like Ms. Butler. This Court's *Mendia* opinion was a civil case having no occasion to consider the Advisory Committee's expectation that limited remand would facilitate sentence reductions, *see* 874 F.3d at 1122, and this Court has not published on the propriety of Rule 12.1 remand in the criminal context. *Accord* Opp-12.

Where, as here, a district court has held a defendant deserves compassionate release under § 3582(c), the defendant's liberty interest in a Rule 12.1 remand to effectuate that order is paramount. Even more so when, as here, a court has found the defendant is at continued risk of assault because the BOP has failed to take meaningful precautionary measures to ensure her safety. GA-4-5. Indeed, the

17

government has not disputed Ms. Butler's claim that, considering the court's order, her continued BOP custody causes her irreparable harm. *See Arevalo*, 882 F.3d at 767. *Cf.* Opp. Considering the specific harm to Ms. Butler, the heightened liberty interests of defendants for whom district courts have held compassionate release warranted, and the understanding that Rules 12.1 and 37 would be employed in these situations, it is exceedingly difficult to imagine circumstances that would justify denying limited remand—thereby entirely precluding § 3582(c) relief. This Court should grant reconsideration en banc to address this important question.

Nor are circumstances justifying denial of a limited remand—and effective extinguishment of Ms. Butler's right to compassionate release—present here. As noted, the government concedes its cross-appeal would *not* be mooted by a compassionate-release order, Opp-14, so its appellate rights are preserved and unharmed by a limited remand. The government's appeal to interests of judicial economy are also unavailing. The government argued courts should only remand under Rule 12.1 if it promotes judicial efficiency, asserting in essence that remand is appropriate only if it saves judicial resources by mooting the party's pending appeal or claims. Opp-11-15. The government also noted that because it would

likely appeal a compassionate-release order and potentially seek a stay, limited remand should be denied because it would likely increase demand on judicial resources. Opp-14.

But the government's positions cannot be squared with Rule 12.1 or its Advisory Committee Notes. Neither state or suggest limited remands are warranted only if they moot an appeal or otherwise promote the government's particular view of judicial efficiency. To the contrary, instead of conditioning limited remand on an appeal being mooted, the Committee cautioned courts *against* frustrating parties' rights to maintain their appeal—advising remand "for the sole purpose of ruling on the motion while *retaining jurisdiction to proceed with the appeal* after the district court rules." FRAP 12.1 advisory committee's notes (emphasis added). Because the Committee expected (1) parties would proceed with their appeal after limited remand and (2) that the district court's order on remand would likely generate another appeal, *see* p.5 *supra*, the government's attempt to read an extra-textual, efficiency-through-mootness requirement into Rule 12.1 is misplaced.[14]

---

[14] Although Rule 12.1 contains no judicial-efficiency requirement, Ms. Butler's requested remand will not create the inefficiencies the government

The cases cited by the government's opposition do not espouse such a requirement either. In *Mendia*, this Court issued a limited remand to allow a party to seek dismissal of claims underlying its appeal as sanctions for discovery violations; but dismissal on remand would not preclude an appeal from that order by the aggrieved party, and this Court remanded expecting the parties may advance "position[s] on the merits" after "the results of the limited remand." 874 F.3d at 1120-22.

Nor do *United States v. Maldonado-Ruiz*, 790 F.3d 62 (1st Cir. 2015), or *United States v. Cardoza*, 790 F.3d 247 (1st Cir. 2015), adopt the government's purported judicial-efficiency requirement. Opp-11-12. In *Maldanado-Ruiz*, the district court ordered a sentence reduction during a pending appeal but failed to

---

claims. *See* Reply-7-10. Butler's appeal will be unimpacted by a compassionate-release order. The government's cross-appeal regarding "the substantive reasonableness" of the sentence, Opp-14, will likely overlap in many respects with an appeal from the compassionate-release order, as both involve § 3553(a) analyses and are reviewed for abuse of discretion. *See United States v. Carty*, 520 F.3d 984, 991-93 (9th Cir. 2008) (en banc) (distinguishing substantive unreasonableness claims from those of procedural error); *United States v. Bryant*, 144 F.4th 1119, 1123 (9th Cir. 2025) (courts must consider § 3553(a) factors in deciding compassionate release). And the government overstates the scope of a compassionate-release appeal, invoking waived claims and speculation about the yet-to-be-issued compassionate-release order. *See* Reply-7-10.

employ the indicative-ruling process. 790 F.3d at 63-65. Recognizing the error, *Maldanado-Ruiz* treated the order as an indicative ruling and granted limited remanded. *Id.* In discussing the practical value of Rule 12.1, *Maldanado-Ruiz* noted that, *inter alia*, its limited-remand procedure avoids confusion and may render an appellate issue moot; but the court did not deem such a result a prerequisite for remand or otherwise suggest remand should be denied if the defendant has pending appellate claims. *Id.* at 64-65.

*Cardoza* also involved a district court granting relief without issuing an indicative ruling. 790 F.3d at 248. Like *Maldanado-Ruiz*, *Cardoza* construed the order as an indicative ruling, remanded under Rule 12.1, and observed the appeal over which it retained jurisdiction might become moot. *Id.* But *Cardoza* never suggested limited remands for § 3582(c) sentence reductions were inappropriate, or should be denied, if a defendant would maintain their pending appeal. *Id.*

At bottom, after "careful consideration" of Ms. Butler's § 3582(c) motion, the district court here determined she is entitled to compassionate release under the extraordinary and compelling circumstances of this case. Ms. Butler asks this Court for a limited remand not only under procedural rules explicitly designed to allow such relief, but also with the strongest of interests in her favor: her right to

21

release from BOP custody that is exceedingly unsafe for her in particular. *See* GA-2, 4-5. Because Butler's interests align with Rules 12.1 and 37 and decidedly outweigh the considerations advanced by the government (whose appellate rights are unharmed), this Court should grant reconsideration and/or reconsideration en banc to address the exceptionally important question here—and grant Ms. Butler's motion for a limited remand under Rule 12.1.

## CONCLUSION

For the foregoing reasons, Ms. Butler respectfully asks this Court to grant reconsideration and/or reconsideration en banc and to grant her motion for a limited remand while retaining jurisdiction over the pending cross-appeals.

Dated: June 29, 2026

Respectfully submitted,

JODI LINKER
Federal Public Defender

s/ Steven J. Koeninger
STEVEN J. KOENINGER
Assistant Federal Public Defender

22

## CERTIFICATE OF COMPLIANCE

Consistent with Ninth Circuit Rule 27-1(d) and Rule 32-3(2), I certify that this brief is proportionally spaced, has a typeface of 14 points or more, and contains 4,191 words.


Dated: June 29, 2026

s/ Steven J. Koeninger
STEVEN J. KOENINGER
Assistant Federal Public Defender

23

# ADDENDUM

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 18 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>LEION BUTLER, AKA Leniyah Butler,<br><br>Defendant - Appellant. | No. 25-7209<br><br>D.C. No.<br>3:23-cr-00449-SI-1<br>Northern District of California,<br>San Francisco<br><br>ORDER |
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>LEION BUTLER, AKA Leniyah Butler,<br><br>Defendant - Appellee. | No. 25-7849<br>D.C. No.<br>3:23-cr-00449-SI-1<br>Northern District of California,<br>San Francisco |

Before: SILVERMAN and CALLAHAN, Circuit Judges.

The opposed motion (Docket Entry No. 18) for a limited remand is denied.

*See* Fed. R. App. P. 12.1(b).

The existing briefing schedule remains in effect.